UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No.: CR-21-55 (MJD/LIB) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT'S SENTENCING** |
| JARED JOHN FIEGE, | ) | **POSITION** |
| | ) | |
| Defendant. | ) | |

## BACKGROUND

On March 11, 2021, Mr. Fiege was charged with five counts of Mail Fraud, in violation of 18 U.S.C. § 1341; four counts Wire Fraud, in violation of 18 U.S.C. 1343; two counts of Bank Fraud, in violation of 18 U.S.C. § 1344; four counts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1); and one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). PSR ¶ 1. On July 14, 2021, he pled guilty to one count of Wire Fraud and one count of Aggravated Identity Theft. PSR ¶ 2.

## ARGUMENT

Since *Booker*, the Supreme Court has emphasized the limited role the guidelines ought to play in sentencing a defendant. They carry no presumption of reasonableness for a sentencing court. *Nelson v. United States*, 555 U.S. 350, 351 (2009) (per curiam). Sentencing courts may vary from the guidelines based on considerations, including simply disagreeing with the guidelines' treatment of an offense. See, e.g., *Kimbrough v. United States*, 552 U.S. 85, 110-11 (2007). And variances from the guidelines do not need to be accompanied by "extraordinary" circumstances. *Gall v. United States*, 552 U.S. 38, 47 (2007). The necessary sentencing touchstone is not the guidelines, but rather 18 U.S.C. § 3553(a), which directs a court to impose a sentence "not greater

1

than necessary" to honor the factors enumerated in that section. See, e.g., *United States v. Huff*, 514 F.3d 818, 820 (8th Cir. 2008) ("[A] district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)." (citation omitted)). This is an inherently individualized and restrictive inquiry, since the primary enumerated goal of § 3553(a) is sentencing balance. *Gall*, 552 U.S. 49-50.

## I.   A SENTENCE OF MONTHS FULLY ACCOMPLISHES THE SENTENCING GOALS SET FORTH IN 18 U.S.C. § 3553(A).

Mr. Fiege respectfully suggests that a sentence of 60 months will achieve the statutory sentencing goals pursuant to § 3553(a). To demonstrate why a downward variance from the Sentencing Guidelines is an appropriate sentence, Mr. Fiege puts forth the nature and circumstances of the offense; his history and characteristics; societal and personal sentencing needs; and the need to avoid disparate sentences. Each of these factors demonstrates that for this case, a reduced sentence will serve as a just punishment under 18 U.S.C. § 3553(a).

18 U.S.C. § 3553 outlines the following factors for the court to determine a sufficient but not greater than necessary sentence which are:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5)    any pertinent policy statement . . . issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A.    **The Nature and Circumstances of the Offense.**

The nature and circumstances of the offense are set out in Paragraphs 6-17 of the Presentence Report and Paragraph 2 of the Plea Agreement. On or around April 2020 through August 2020, Mr. Fiege initiated a scheme, defrauding individuals, state and federal government programs, and financial institutions by creating bank accounts to obtain others' identities, applying for state and federal benefit programs using others' identities, creating and using false identification forms and contact information, and other acts.

Mr. Fiege started the scheme after using his family member's computer, R.B., an individual who prepared taxes for friends and former coworkers, and accessed individual's names, birth dates, and social security benefits. Using these identifications, Mr. Fiege applied for Economic Injury Disaster loans (EIDL) and the Minnesota Unemployment Insurance program. He received $17, 495 from the SBA under the identity of T.L. Additionally, Mr. Fiege created bank accounts using these identities. He created emails and purchased pre-paid cell phones, claiming to be these individuals.

Mr. Fiege provided these financial institutions and state and federal programs with mailing addresses that were neither his nor any of the identities he used to apply. He would intercept these mailings before they reached the indicated address. On July 14, 2021, Mr. Fiege took

3

responsibility for his actions and timely pled guilty to one count of Wire Fraud and one count of Aggravated Identity Theft.

**B.      Mr. Fiege's History and Characteristics.**

Mr. Fiege's parents divorced when he was a toddler. He spent most of the time with his mother, his primary caretaker, and two weekends a month at his father's house. However, his father had an irregular work schedule which would usually lead to one of the weekends being cancelled. Although he communicated often with his father, Mr. Fiege had a difficult relationship with his stepmother. He believes she was resentful of the time and money that was required to provide for him and attempted to obstruct communication with his father. Ms. Fiege, the Defendant's mother, confirmed that Mr. Fiege's stepmother made it difficult to co-parent with his father. Additionally, the Mr. Fiege's father admitted that his second wife would say cruel things about the Mr. Fiege.

Mr. Fiege felt supported as a child. He had a close relationship with his grandparents, who were very involved in his life. He would have breakfast at his grandmother's apartment every morning before leaving for school and he would go to hockey games regularly with his grandfather. Sadly, Mr. Fiege's relationship with his grandparents was cut short. When he was 10-years old, Mr. Fiege found his grandmother's body in her apartment. A few months later, his grandfather passed away suddenly. Due to their close bond, Mr. Fiege had a difficult time processing their deaths and is still impacted by these events. His mother placed him in therapy, but she believes he did not attend long enough to address the trauma he experienced.

In 2011, Mr. Fiege was diagnosed with depression. His next evaluation was in 2017, where he was diagnosed with post-traumatic stress disorder (PTSD) as a result from his grandparents' deaths and incidents he responded to as an EMT. Although there may be residual trauma from his line of work, Mr. Fiege was ultimately diagnosed with mood disorder. He attended therapy

intermittently after this diagnosis. Mr. Fiege believes that he would benefit from not only treatment and medication, but a resolution of his charges and his return to the community. He feels that his depression is linked to his legal troubles he has had since 2017.

Mr. Fiege has continuing support from his parents. Both had frequent contact with him during his pretrial incarceration. His mother believes that he is intelligent but has problems that he needs to work on to fully heal. She is willing to retire and move to Arizona with Mr. Fiege to help him begin a fresh start. She wants to support him in any way to get "his life back to what it was before all of this happened." Mr. Fiege's father also believes that his son is intelligent and a good person but feels that the Defendant could have benefitted by spending more time with him.

Notably, Mr. Fiege realized he does not want to spend the rest of his life in continuing legal trouble. He has resolved multiple cases and is looking forward to a fresh start. Mr. Fiege accepted responsibility for his actions and admits he wrongfully obtained and utilized individuals' credit information. He regrets abusing the trust he had with Ron Booth, his step dad, and regrets the harm he caused to the victims of his identity theft. Mr. Fiege wants to be a healthy, productive member of society and work to pay the restitution that is owed.

## C.   Societal and Personal Sentencing Needs and an Appropriate Sentence.

In fashioning an appropriate sentence, the Court is directed to consider society's needs for a sanction that is a just punishment, promotes respect for the law, deters criminal conduct, and reflects the seriousness of the offense, while ensuring the sanction is appropriate for the individual offender before the Court.

As for the seriousness of the offense, Mr. Fiege pled guilty to one count of Wire Fraud and one count of Aggravated Identity Theft. Initially, Mr. Fiege had a criminal history category of III and a guideline range of 51 to 63 months, based on a total offense level of 22. The consecutive 2-year sentence for aggravated identity theft results in a range of either 65 to 75 months or 75 to 88

5

months. However, due to Mr. Fiege taking responsibility for his other matters in St. Louis County and Washington County, his criminal history category increased to IV. In St. Louis County, Mr. Fiege admitted to a probation violation on December 9, 2021, regarding Theft offenses (DUCR-17-1622; DUCR-17-2041; and DUCR-17-2785) and pled guilty to a Stalking offense (DUCR-17-1622). With respect to Washington County, Mr. Fiege pled guilty to a Stalking offense (CR-18-892). Due to Mr. Fiege's acceptance of responsibility in these matters, the sentencing guidelines range of imprisonment was amended to 63 to 78 months. Additionally, the guidelines mandate a two-year sentence for the conviction of Aggravated Identity Theft.

Mr. Fiege carries remorse for his actions and timely pled to the instant offense. Since he was charged with this offense, he has resolved his other pending criminal matters. Furthermore, he has taken the opportunity to improve himself while in custody. Mr. Fiege has put in 1,120.65 hours in education. He has participated in College Composition, Anger Management, Strategies for Getting a Job with a Criminal History, Offender Corrections, and several other classes. Overall, Mr. Fiege has completed 246 courses and 1,733 lessons. He plans to use the information and skills he has learned to assist him with securing a job upon release. Additionally, Mr. Fiege is open to attending therapy to better his mental health.

Mr. Fiege would like to move to Arizona with his mother once released. While in custody, Mr. Fiege's stepfather suffered from a stroke. He would like to assist his mother with caring for him during this difficult time.

Mr. Fiege has faced many challenges while in custody. He has been in protective custody for 14 months. For 73 days he was locked down for 23 hours a day, with one hour utilized for exercise. He has not had any major discipline issues or tickets.

Society does not need a greater sentence of imprisonment imposed than the mandatory minimum. The Defense respectfully suggests to this Court that a sentence of 60 months is

sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. §3553(a) and

promote respect for the law, as well as provide Mr. Fiege the opportunity to become a productive

member of society and allow him to be surrounded by those that support him.

While his father was one of the victims of his crimes, Mr. Fiege still enjoys the support of

his family, including his father.

## CONCLUSION

For the reasons stated above, Mr. Fiege respectfully suggests that this honorable court

sentence him to 60 months.    The Defense will further argue orally other factors that may warrant

a lower sentence.

Respectfully submitted,

RIVERS LAW FIRM, P.A.


Date: May  , 2022_____            By:    */s/ Bruce Rivers*_____
                                        Bruce Rivers, Atty. ID 282698
                                        Attorney for Defendant
                                        701 Building Suite 300
                                        701 Fourth Avenue South
                                        Minneapolis, MN 55415
                                        Tel:    (612)339-3939
                                        Fax:    (612)332-400
                                        *Email: bruce@riverslawyers.com*